NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., et al., | : : : | |
| Plaintiffs, | : : | **Civil Action No.  12-7281 (SRC)** |
| v. | : : | **OPINION** |
| MLS MEDICAL GROUP LLC, et al., | : : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion filed by Defendants MLS Medical Group LLC and Mark L. Schwartz, D.O. ("collectively "Defendant" or "MLS") to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "Plaintiff" or "GEICO") have opposed the motion. The Court has considered the papers filed by the parties and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons expressed below, the Court grants Defendant's motion but gives Plaintiff leave to re-plead certain claims.

## I. BACKGROUND

GEICO underwrites automobile insurance policies in New Jersey.  Pursuant to state statute, those policies provide benefits for personal injuries sustained in an accident involving the covered automobile, regardless of whether the driver was at fault for the accident. This coverage in auto insurance is known as personal injury protection, commonly abbreviated as "PIP." In connection with receiving treatment for injuries, insureds may assign their right to PIP benefits to medical providers.  Defendant MLS is one such provider, which, according to the Amended Complaint, has submitted and received payment on PIP claims for treatment rendered to GEICO insureds.  Defendant Schwartz is a doctor who owns MLS and treats patients in the practice.  According to the Amended Complaint, MLS does not market its services to the general public or maintain a fixed location for its practice.  Rather, it alleges, MLS is a "transient provider" that operates from the offices of a network of healthcare providers who specialize in treating patients with no-fault automobile accident insurance and refer those patients to MLS.

This action arises out of GEICO's allegations that numerous pending and already-paid PIP claims made by MLS to GEICO are fraudulent.  GEICO alleges that MLS obtains patients, including GEICO-insured individuals, by paying the referring healthcare providers kickbacks disguised as leasing fees for MLS to use the office space and/or personnel of the referring provider.  Then, GEICO further alleges, MLS conducts an initial examination of these GEICO-insured patients and order phony or needless electrodiagnostic tests, despite playing "no genuine role in the treatment or care of the Insureds."  (Am. Compl. ¶ 27.)  According to the Amended Complaint, pursuant to benefits assignments executed by the patient-insureds, MLS submits PIP claims to GEICO for treatment and tests that were either not medically unnecessary or not

2

actually administered at all.  It alleges that MLS collects payment from GEICO based on misrepresentations made mainly through billing forms, known as HCFA-1500 forms, in which MLS charges GEICO using medical billing codes, known as "CPT codes," which correspond to diagnoses, services and tests that a presenting patient's condition did not warrant.  GEICO refers to this scheme in the Amended Complaint as MLS's fraudulent treatment and billing protocol.

The Amended Complaint alleges that GEICO has been defrauded out of $345,000 in PIP benefits paid to MLS as a result of the fraudulent treatment and billing protocol.  It seeks to disgorge these amounts under various legal theories of relief: violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, et seq.; violation of the federal Racketeering Influenced Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1962(c); common law fraud and unjust enrichment.  GEICO also asserts a claim pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, asking this Court to declare that over $1 million in pending claims which have been submitted to GEICO by MLS are fraudulent and thus not payable to MLS.  It also cross-moves for an order staying all pending PIP arbitrations between GEICO and MLS while the declaratory judgment claim proceeds.

MLS moves to dismiss the Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  It argues that the Court lacks subject matter jurisdiction over the claim for declaratory relief because it concerns PIP benefits claims that are currently the subject of pending arbitration proceedings.  It further argues that the remainder of the claims must be dismissed for failure to meet the pleading standards of Federal Rules of Civil Procedure 8(a) and 9(b), the heightened requirement applicable to fraud claims.

## II.   DISCUSSION

### A.  Legal Standards

MLS moves to dismiss, in part, pursuant to Rule 12(b)(1), which provides that an action must be dismissed when the Court lacks subject matter jurisdiction.  They maintain that the declaratory judgment claim fails to present a justiciable "case or controversy."  Article III of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." "The case or controversy requirement must be met regardless of the type of relief sought, including declaratory relief." Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir.1992) (citation omitted).

Defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which governs dismissal for failure to state a claim upon which relief can be granted.  A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.)  Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and then determine whether a reasonable inference may be drawn that the defendant is liable for the alleged misconduct." Argueta v. U.S. Immigration and Customs

Enforcement, 643 F.3d 60, 74 (3d Cir. 2011). While the Court must accept all factual allegations as true, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.  In a Rule 12(b)(6) motion, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).

The claims in the Amended Complaint are predicated on allegations of fraudulent conduct. A claim sounding in fraud must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As interpreted and applied by the Third Circuit, Rule 9(b) requires "plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.' " In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)); see also Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir.2007) (holding that Rule 9(b) requires a party alleging fraud to state the circumstances of the alleged fraud "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it] is charged.'").

### B.  Declaratory Judgment Claim

Plaintiff seeks a declaration that MLS has no right to recover the PIP benefits it seeks in countless pending claims submitted to GEICO.  GEICO alleges that these claims are based on fraudulent bills generated by the kickback scheme and/or by medically unnecessary treatment, which GEICO asserts are expenses that it is not obligated to cover under its applicable automobile insurance policy and under the governing New Jersey PIP statute.  GEICO also argues that MLS has no right to a recovery of medical expense benefits under the PIP statute because the entire relationship between patient-insureds and MLS is founded on the alleged kickback scheme and therefore, according to GEICO, the benefits assignments made by the patient-insureds in favor of MLS are invalid.  Defendant argues that the disputes over these pending PIP benefits claims must be decided through the statutorily mandated arbitration process and that, therefore, they present no justiciable case or controversy.  Put differently, MLS contends that the Declaratory Judgment Act cannot empower this Court to entertain a dispute which it lacks authority to decide.

The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." Cutaiar v. Marshall, 590 F.2d 523, 527 (3d Cir.1979). The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree and the question in each case is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy any reality to warrant the issuance of a declaratory judgment." <u>Golden v. Zwickler</u>, 394 U.S. 103, 108 (1969) (quoting <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)).

Defendant's argument that this Court lacks subject matter jurisdiction over GEICO's declaratory judgment claim relies on the New Jersey statute governing the resolution of PIP claim disputes.  It provides that

> Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage . . . arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.

<u>N.J.S.A.</u> 39:6A-5.1.  MLS argues that it is entitled to submit to arbitration disputes over the "pending fraudulent billing" underlying the declaratory judgment claim. GEICO does not contest that arbitration proceedings concerning the parties' disputes over PIP benefits have been initiated.  Rather, it in fact requests that this Court stay those proceedings so that the parties' rights on the pending PIP claims can be adjudicated in this action "on a wholesale basis." (Pl. Br. at 45.)  Relying on the decision issued by the New Jersey Law Division in <u>Allstate Insurance Company v. Lopez</u>, GEICO argues that the scope of the fraud committed by MLS with regard to the pending claims is so far-reaching that individually arbitrating its disclaimer or denial of coverage based on this fraud would be unmanageable and risk inconsistent results.

GEICO's argument based on efficiency and judicial economy, however, runs counter to the PIP arbitration statute and the decisional authority interpreting it.  The statute provides that, where either party elects arbitration, "any dispute" concerning payment PIP benefits for medical must be submitted to binding arbitration.  <u>See</u> <u>N.J.S.A.</u> 39:6A-5.1; <u>see also</u> <u>State Farm Mutual</u>

Auto. Ins. Co. v. Molino, 289 N.J. Super. 406, 410 (App. Div. 1996) (noting that the word "dispute" in the statute is unqualified).  The statute which governs resolution of PIP matters further provides a definition of "disputes involving medical expenses benefits."  See N.J.S.A. 39:6A:5.1(c).  The term encompasses, without limitation, a host of matters concerning coverage, including, expressly, many of the defenses to coverage raised by GEICO in this action. To cite a few, the statute lists: "whether the disputed medical treatment was actually performed;" the necessity or appropriateness of consultations by other health care providers;" and "whether the treatment performed is reasonable, necessary, and compatible with the protocols provided."  Id. New Jersey courts have held that the language of the statute mandating PIP arbitration must be "read as broadly as the words themselves indicate, that statutory arbitrators are authorized to determine both factual and legal issues, and that coverage issues are to be decided by the arbitrator in the same manner as issues dealing with the extent of injury and the amount of recovery."  State Farm Ins. Co. v. Sabato, 337 N.J.  Super. 393, 396-97 (App. Div. 2001) (citing Molino, 289 N.J. Super. at 410).  The Appellate Division, in Sabato, held that threshold issues of whether coverage exists, including an insurer's fraud-based defenses, must be resolved in the mandatory arbitration proceedings. Id.  The Sabato court stressed the statutory directive to arbitrate PIP disputes and repeated its precaution, made in Molino, that courts should not countenance end-runs around the statutory scheme: "Carriers should not be empowered to avoid arbitration simply by characterizing PIP disputes as questions of 'entitlement' or 'coverage' and then seeking judicial resolution of those issues."  Id. at 397.

In so holding, the Sabato court expressly made note of the Law Division's decision in Lopez, on which GEICO relies in an attempt to stay arbitration and proceed with its declaratory

judgment action.  Lopez involved a declaratory judgment action in which an automobile insurer

contended that it was not obligated to pay PIP benefits on numerous claims involving various

insureds and accidents because the car accidents had been staged and the policies were therefore

void for fraud. Lopez, 311 N.J. Super. at 662-63.  The Law Division granted the insurer's motion

to stay trials and arbitration proceedings concerning the various individual PIP claims, reasoning

that, despite the breadth of the statutory PIP arbitration provisions, the massive and

conspiratorial nature of the fraud allegedly perpetrated by insureds and providers went beyond

the question of fraud as it related to the occurrence of an underlying accident.  Id. at 671-72.  The

Lopez court's holding that all matters arising out of the many allegedly staged accidents should

be decided in one legal action was based on "judicial economy, uniformity in result, and the

principles of the entire controversy doctrine," the same principles that GEICO invokes in this

case.  However, the Sabato decision, issued by the Appellate Division, clearly rejected Lopez.  It

not only distinguished the "massive insurance fraud ring" at issue in Lopez, but also noted that to

the extent Molino and Lopez were inconsistent, the appellate decision in Molino must control.

Sabato, 337 N.J. Super. at 397.

Although Defendant argues that the Court lacks subject matter jurisdiction over the

declaratory judgment claim, it does in fact concede that there is a dispute between MLS and

GEICO.   The Court cannot conclude that the claim fails for failure to present a case or

controversy.  Rather than a jurisdictional issue, Defendant's position that the dispute must be

submitted to arbitration would appear to raise an argument that the declaratory judgment claim

fails to plead a claim upon which this Court may grant relief.  In any event, the question of

whether the Court dismisses the claim under Rule 12(b)(1) or 12(b)(6) is largely academic.  Even

assuming there is a basis for subject matter jurisdiction over the declaratory judgment claim, the Court will, in its discretion, decline to exercise its power to adjudicate the claim for a declaratory judgment under 28 U.S.C. § 2201. The Supreme Court has noted that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995).

Based on the PIP arbitration statute and the New Jersey Appellate Division's decisions in Molino and Sabato, the Court concludes that it would be inappropriate to entertain the declaratory judgment claim brought by GEICO. Based on the facts alleged, the Court concludes that Defendant has the statutory right to compel arbitration of disputes concerning entitlement to PIP benefits. Molino expressly held that to the extent there is any ambiguity what constitutes a "dispute" subject to the arbitration provision, the term must be construed liberally "to harmonize the arbitration provision with our firm policy favoring prompt and efficient resolution of PIP disputes without resort to the judicial process." Molino, 298 N.J. Super. at 410.[1]

The claim, though couched in the language of the Declaratory Judgment Act, at bottom requests that this Court disrupt the statutory scheme created by the New Jersey legislature

---

[1] The Court acknowledges that it bases its conclusion that Geico's pending PIP disputes are subject to the statutory arbitration process on decisions issued by the state's appellate court. Typically, when this Court must decide a claim involving matters of state law, it must "apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issue" before the Court. Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir. 1996). The parties' briefing and the Court's own research, however, revealed no decision by the New Jersey Supreme Court addressing the precise issue before this Court, that is, whether numerous PIP claims disputed on the basis of the same alleged fraudulent scheme may be challenged outside of the statutory arbitration procedure. The Third Circuit has directed that "[i]n the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." Id. Indeed, the United States Supreme Court has held that "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940). The New Jersey Appellate Division's decisions in Molino and Sabato provide a strong indication that the state's Supreme Court would hold that the PIP statute compels arbitration of the PIP claims at issue in Geico's declaratory judgment action.

mandating that disputes regarding claims for PIP benefits be decided in arbitration. The statutory

provision governing PIP disputes is part of New Jersey's Automobile Insurance Cost Reduction

Act, N.J.S.A. 39:6A-1 to -35, whose purpose is "to establish an informal system of settling tort

claims arising out of automobile accidents in an expeditious and least costly manner, and to ease

the burdens and congestion of the State's courts." N.J.S.A. 39:6A-24. In enacting it, the state

legislature declared it to be "comprehensive legislation designed to preserve the no-fault system,

while at the same time reducing unnecessary costs which drive premiums higher." N.J.S.A.

39:6A-1.1. One factor the legislature expressly identified as contributing to higher costs, and

which the legislation sought to address, was fraud on the automobile insurance system "whether

in the form of inappropriate medical treatments, inflated claims, staged accidents, falsification of

records, or in any other form . . . . " Id.  In this Court's view, declining to entertain a claim

arising under federal law that would interfere with this state statutory scheme is the prudent

course. Cf. Burford v. Sun Oil Co., 319 U.S. 315 (1943) (holding that a federal court should

abstain from exercising jurisdiction over a case where it involves state law issues and the state

has created a complex regulatory scheme that will be disrupted by federal jurisdiction); Lac

D'Amiante du Quebec v. Am. Home Assurance Co., 864 F.2d 1033, 1043 (3d Cir. 1988) ("As

read in subsequent cases, *Burford* stands for the proposition that where a state creates a complex

regulatory scheme, supervised by the state courts and central to state interests, abstention will be

appropriate if federal jurisdiction deals primarily with state law issues and will disrupt a state's

efforts 'to establish a coherent policy with respect to a matter of substantial public concern.'"

(quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)).

11

Moreover, by lumping an unknown number of PIP disputes together into one declaratory judgment claim, GEICO asks this Court to make blanket determinations about claim-specific questions, including, to name a few, the medical necessity of treatment, whether the treatment was properly billed according to the appropriate CPT code and whether the treatment billed to GEICO was actually rendered at all.  These grounds for denying coverage are enumerated by the governing statute as falling within the purview of a "dispute involving [PIP] medical expense benefits" and thus are within the power of the arbitrator to decide.  GEICO argues that the statutory scheme may be set aside in situations in which the same fraud-based defenses will be raised to a multitude of PIP claims, which it contends are related through a common nucleus of wrongdoing on the part of the claimant.  Apart from a lack of binding authority to support this position, the problem with GEICO's argument is that the New Jersey statute governing PIP benefits disputes and the New Jersey Appellate Division's cases interpreting that statute point to the opposite conclusion.[2]

Heeding the PIP statute and governing caselaw, this Court will, in its discretion, decline to entertain GEICO's claim for a declaratory judgment that MLS is not entitled to payment on its pending PIP claims.  The First Count of the Amended Complaint will accordingly be dismissed.

---

[2] GEICO also argues that the declaratory judgment claim may proceed because MLS has no standing to compel arbitration.  This argument, however, is based on a flawed understanding of the source of MLS's rights.  According to the Amended Complaint, MLS claims PIP benefits from GEICO pursuant to assignments executed by its GEICO-insured patients.  GEICO argues that the assignments are invalid because they are obtained by MLS by paying illegal kickbacks to the referring providers in exchange for referrals.  For reasons that will be discussed below, the allegations concerning kickbacks are conclusory at best.  Moreover, while the Amended Complaint may aver that MLS billed GEICO for treatment that either did not occur or was unnecessary, this alleged fraud on GEICO does not call into question the validity of the agreement between a patient and MLS assigning policy PIP benefits.  Indeed, nothing in the Amended Complaint plausibly states that the assignment from which MLS derives its right to act as the PIP claimant, that is, stand in the shoes of the GEICO-insured patient, is a legal nullity.

### C.  Insurance Fraud Prevention Act

In the Second Count of the Amended Complaint, GEICO asserts a claim pursuant to New Jersey's Insurance Fraud Prevention Act ("IFPA") to recover PIP benefits it has already paid to MLS, alleging that MLS obtained the benefits through its submission to GEICO of claim forms and treatment reports which contained misrepresentations about the services performed.  IFPA prohibits the presentation of "any written or oral statement as part of, or in in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim." N.J.S.A. 17:33A-4a(1).  The statute authorizes an insurance company to bring a private cause of action "in any court of competent jurisdiction" to seek compensation for such fraud, including recovery of attorneys' fees and, where the defendant has engaged in a pattern of IFPA violations, treble damages. N.J.S.A. 17:33A-7a & b.

Defendant moves to dismiss the claim on two grounds.  First, it argues that the claim amounts to an attempt to re-litigate issues that were or could have been raised in PIP arbitration and is therefore barred by the doctrine of collateral estoppel. Second, it argues that the claim impermissibly lumps together all PIP claims paid pursuant to a final arbitration award over the past four years and challenges them all en masse based on broad and unspecified allegations of the PIP claims' fraudulent nature due to the alleged kickback scheme, Defendant's misrepresentations regarding treatment rendered and/or the medical necessity of such treatment.

At this stage of the litigation, and on the record presented, the Court cannot conclude that Defendant has met its burden of establishing the affirmative defense of collateral estoppel, as to the IFPA claim or any other claim for relief predicated on the already-paid PIP benefits.   For

13

collateral estoppel, or issue preclusion, to apply, four requirements must be met: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action. Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006). To establish that collateral estoppel bars any claim asserted by GEICO in this lawsuit, Defendant would, at a minimum, have to present evidence that the fraud issues on which GEICO bases its claims were actually considered and decided in the underlying PIP arbitration. Defendant conceded, as it must, that a finding that any claim for relief is barred under a preclusionary doctrine requires "documentary proof as to those claims that have been subject to a final determination." (Def. Reply Br. at 9.) On this record, and based solely on the Amended Complaint, the Court cannot determine what portion of the $345,000 in paid PIP benefits is predicated upon arbitration awards. Nor can it determine, in those instances in which the PIP claim submitted to GEICO by MLS was disputed and arbitrated, that the arbitrator's decision was based on an actual finding concerning the alleged kickback scheme, billing practices, medical necessity of treatment or any of the other issues raised in the IFPA claim and other claims for recovery of allegedly fraudulent PIP benefits claims.[3] These determinations clearly call for a fact-intensive review of the arbitration record on a claim by claim basis, and Defendant simply has not presented any evidence that would carry its burden of establishing that the IPFA, or other fraud claims pled in the Amended Complaint, are barred.

---

[3] To the extent Defendant argued the IFPA claim is barred because the matters underlying the claim could have been raised by GEICO in the arbitration proceedings, Defendant would appear to be asserting the doctrine of claim preclusion, or res judicata. Unlike issue preclusion, which requires that an issue have been actually litigated and decided in a previous proceeding, claim preclusion "bars not only claims that were brought in a previous action, but also claims that could have been brought." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). Again, Defendant makes no demonstration that the IFPA challenge could have been raised in arbitration. The Court notes that the statute creating the cause of action provides that it be brought in a "court of competent jurisdiction." N.J.S.A. 17:33A-7a. This provision indicates that an IFPA claim cannot be raised in arbitration. See Nationwide Fire Ins. Co. v. Fiouris, 395 N.J. Super. 156, 161 (App. Div. 2007).

14

The Court does find, however, that the IFPA claim must be dismissed for failure to meet even the basic pleading requirement of Rule 8(a), much less the heightened standard applicable to fraud claims. The Amended Complaint asserts, in the broadest terms, that MLS has violated IFPA because all claims submitted and paid since 2008, when MLS began to engage in the scheme GEICO labels the fraudulent billing protocol, are based on misrepresentations in claim and treatment forms. The Amended Complaint lacks factual allegations as to statements actually made by MLS in support of PIP claims and the circumstances that would plausibly establish that such statements, whether made in a treatment report or asserted through CPT code corresponding to certain treatment or tests, were fraudulent. The Amended Complaint, the Court notes, is not entirely devoid of facts. At paragraphs 58 and 59, it does describe some specific examples of allegedly fraudulent PIP claims, identifying the date of the underlying car accident, the delay in presenting to MLS for treatment for injuries sustained in the car accident and in some instances the fact that the police report noted that the accident caused no injuries. This approach to pleading, however, fails to state a sufficient IFPA claim meeting the plausibility standard articulated by Iqbal and Twombly, because it essentially extrapolates from a few examples the completely unsupported conclusion that all or most PIP benefits paid by GEICO to MLS over the course of years – totaling at least $345,000 in payments – have been based on false diagnoses and other misleading information submitted to GEICO in connection with the claim. The IPFA claim GEICO attempts to assert is purely speculative, contravening the Supreme Court's instruction that Rule 8(a) demands that *facts* alleged in a complaint, assumed to be true, demonstrate that a defendant is *liable* for the misconduct of which the defendant is accused. Moreover, Rule 9(b), which sets the pleading standard for fraud-based claims, certainly demands

more to state an adequate IFPA claim as to PIP benefits paid based on MLS's allegedly misleading statements.  To reiterate, an IFPA violation requires the submission of a knowingly misleading statement in support of a claim for insurance benefits.  The Amended Complaint contains no claim-specific allegation of fraud, which identifies with specificity the offending statement, why it is false or misleading and the basis for the claimant's knowledge of its alleged falseness.  Here, GEICO presents no claim-by-claim analysis as to statements made in billing forms and/or treatment records, why the stated diagnosis (or corresponding CPT code) was false or exaggerated and why the treatment or electrodiagnostic test administered was medically unnecessary, as Plaintiff alleges.  Instead, GEICO makes the conclusory allegation that MLS must be disgorged of $345,000 in PIP benefits because "most of the insureds whom the Defendants purport to treat have been involved in very minor accidents involving low-speed collisions or side-swipes," which, GEICO broadly asserts, do not cause long-term injuries and thus do not support the diagnoses, treatment and tests for which MLS has billed GEICO pursuant to the insureds' assigned PIP benefits. (Am. Compl., ¶ 60.)  Equally unavailing for lack of specificity as to circumstances indicating fraud are GEICO's blanket assertions that the claims involve a delay between the date of the accident and treatment and that this delay, without more, demonstrates fraud.

These deficiencies compel dismissal of the IFPA claim.  However, the Court will dismiss the claim without prejudice and with leave to re-plead, as the deficiencies discussed could potentially be remedied by stating additional and claim-specific factual allegations to support the IFPA claim.  See Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should

16

grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

### D. RICO Claim

GEICO asserts a civil RICO claim against Dr. Schwartz, alleged to be the owner of MLS, for participating in a scheme to defraud GEICO. Pursuant to 18 U.S.C. § 1962(c), a person injured in his business or property by a violation of the RICO statute may bring a civil suit to recover treble damages, costs, and attorneys' fees. Genty v. Resolution Trust Corp., 937 F.2d 899, 906 (3d Cir.1991). A properly pled violation of 18 U.S.C. § 1962(c) requires a plaintiff to allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir.2010) (quoting Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir.2004)). "Racketeering activity," also known as a predicate act, is defined in the statute at 18 U.S.C. § 1961(1), which lists various state and federal crimes. A "pattern" of racketeering activity requires the commission of at least two acts of racketeering within a ten-year period. 18 U.S.C. § 1961(5).

In this case, the pattern of racketeering is alleged to consist of mail fraud, in violation of 18 U.S.C. § 1341. The statute prohibits the use of the United States mail in furtherance of a scheme or artifice to defraud for the purpose of obtaining money or property. 18 U.S.C. § 1341; United States v. Yusuf, 536 F.3d 178, 187 (3d Cir. 2008). GEICO alleges that Dr. Schwartz acted together with MLS to commit mail fraud through submission of PIP claims by mail. The Amended Complaint alleges that Dr. Schwartz violated RICO

> by submitting, or causing to be submitted, through use of the United States mail "hundreds of fraudulent bills on a continuous basis for over four years seeking [PIP benefits] payments that MLS was not entitled to receive under the No-Fault Laws because the bills misrepresented or exaggerated the level and nature of the Fraudulent Services that were

17

> provided, and because the billed-for fraudulent services were not
> medically necessary, were performed and billed pursuant to a pre-
> determined, fraudulent treatment and billing protocol designed solely to
> enrich the Defendants, were performed pursuant to kickbacks that the
> Defendants paid to referring providers, and in many cases were not
> performed at all.

(Am. Compl., ¶ 121.) GEICO claims it has suffered a loss of its business and property by paying

at least $345,000 to MLS pursuant to the fraudulent bills submitted by mail in the scheme

described above.

Defendant challenges the sufficiency of the RICO claim based on the failure to plead the

predicate mail fraud offense with particularity. The Third Circuit has indeed held to plead a

viable RICO claim in which the predicate racketeering activity consists of mail fraud, the

predicate act must meet the heightened standard of Rule 9(b). See Lum, 361 F.3d 217, 223–24

(3d Cir. 2004).

Insofar as the mail fraud consists of the submission of claims to GEICO based on false

diagnoses, non-treatment, and/or the provision of medically unnecessary treatment or tests, the

RICO claim suffers from same deficiencies discussed by the Court above in connection with its

analysis of the IFPA claim.  The Amended Complaint describes, generally, the standard handling

of GEICO-insured patients: patients are referred to MLS pursuant to an alleged kickback

arrangement and present for treatment even though they mostly have minor or non-existent

injuries and then GEICO "routinely" bills under CPT codes that overstate the severity of the

injury and/or correspond to medically unnecessary tests and treatment.  It alleges that this

misconduct applies to "virtually every case" and "almost every instance."  (See, e.g., Am.

Compl. at ¶¶ 50-56.)  Missing from the Amended Complaint are factual allegations of fraud

tailored to why any individual diagnosis or treatment and its corresponding billing were false.  In

other words, GEICO asserts that Dr. Schwartz submitted "fraudulent bills" based on generalized and conclusory statements about the reasons it believes the PIP claims were not justified, notably without identifying the misrepresentation made in a particular claim and without alleging particular facts that would support the reasonable inference that the individual claim was fraudulent.

To the extent the fraudulent nature of the bills is based on the allegation that MLS obtained its GEICO-insured patients as a result of a kickback arrangement with referring doctors, the Amended Complaint likewise fails to allege fraudulent billing with any particularity.  The purported "kickback scheme," as alleged in the Amended Complaint, consisted of MLS's receiving patients through referrals, operating out of the offices of the referring physicians who "specialized" in treating patients with PIP insurance, and making lease payments to the referring providers for use of the office space and personnel.  The generation of business by a doctor's office through patient referrals by other doctors does not, without more, raise even an inference of unlawful activity, and GEICO's assertion that the lease payments made by GEICO to referring physicians were simply kickbacks in disguise is purely conclusory.  Other than GEICO's broad-brush allegations that most of the patients seen by MLS through this referral arrangement were not as seriously injured as the CPT codes corresponding to diagnosis and treatment would reflect, or in some cases not injured at all, no facts support its characterization of the payments as kickbacks.  Simply attaching this label to ostensible referral fees or lease payments does not transform the payments into bribery, and it does not suffice to plead with particularity that any MLS bill, submitted by mail to GEICO, establishes the commission of mail fraud.

A viable RICO claim requires the alleged commission of at least two predicate racketeering acts, in this case mail fraud, and Rule 9(b) requires that the circumstances constituting fraud be stated with particularity. Permitting the RICO claim to proceed without requiring particularized, claim-by-claim factual allegations as to the predicate fraud would relax enforcement of Rule 9(b) simply because, to accept GEICO's characterization, the scheme or artifice to defraud was "massive." GEICO fails to cite Third Circuit precedent that endorses a generalized approach to pleading fraud-based RICO claims. As currently pled, the RICO claim fails to state a claim upon which relief may be granted. Again, the Court will dismiss without prejudice and with leave to re-plead.[4]

### E.  Common Law Fraud and Unjust Enrichment

Plaintiff's common law claims of fraud and unjust enrichment are predicated upon the same factual allegations pled in support of the IFPA and RICO claims. For the reasons discussed above, the claims must be dismissed, but the Court will permit Plaintiff the opportunity to file a Second Amended Complaint that attempts to plead factual allegations sufficient to support them.

---

[4] The Amended Complaint invokes federal jurisdiction on the basis of a claim arising under the laws of the United States, pursuant to 28 U.S.C. § 1331, as well as on diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1). The Amended Complaint, however, fails to state diversity jurisdiction, because it does not set forth sufficient facts concerning the citizenship of each member of Defendant MLS, a limited liability company. See Zambelli Fireworks Mfg. Co., Inc. v Wood, 592 F.3d 412, 420, (3d Cir. 2010) (holding that, for purposes of diversity jurisdiction, "the citizenship of an LLC is determined by the citizenship of its members."). In light of the dismissal with prejudice of the Declaratory Judgment Act claim, the only federal claim which potentially may remain in this case is the RICO cause of action, assuming it is adequately pled in a Second Amended Complaint. However, in the event that the sufficiency of the RICO claim is again challenged by Defendant, a dismissal of the RICO claim would leave no federal question on the face of the operative complaint and would thus militate in favor of dismissing the remaining state claims without prejudice, so that they may proceed in state court. 28 U.S.C. § 1367 (providing that "district courts may decline to exercise supplemental jurisdiction . . . if the district court has dismissed all claims over which it has original jurisdiction"); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss the declaratory judgment claim with prejudice pursuant to Rule 12(b)(6). The remainder of the claims in the Amended Complaint will be dismissed without prejudice for failure to state a claim upon which relief may be granted. The Court will grant Plaintiff leave to file a Second Amended Complaint re-pleading the IFPA, RICO, common law fraud, and unjust enrichment claims. It emphasizes, however, that any amended complaint must contain factual allegations focused on individual PIP claims alleged to be fraudulent and not rely on broad conclusory assertions as to the nature of Defendant's alleged misconduct. The Court will deny Plaintiff's cross-motion to stay PIP arbitrations. An appropriate Order will be filed.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  December 6, 2013